[Doc. No. 104, C.A. 13-3715]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SAM YOUNES, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>7-ELEVEN, INC.,<br><br>             Defendant. | Civil No. 13-3500 (RMB/JS) |
| 7-ELEVEN,<br><br>             Plaintiff,<br><br>      v.<br><br>KARAMJEET SODHI, et al.,<br><br>             Defendants. | Civil No. 13-3715 (MAS/JS) |
| NEIL NAIK, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>7-ELEVEN, INC.,<br><br>             Defendant. | Civil No. 13-4578 (RMB/JS) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on 7-Eleven's Motion to Seal [Doc. No. 104] the April 29, 2014 Certification executed by

1

its former Corporate Investigations Supervisor, Kurt McCord. The Certification [Doc. No. 98-2] was attached to defendants' May 6, 2014 discovery application.[1] Defendants oppose the motion. The Court is being asked to decide if McCord's Certification should be sealed in the absence of competent evidence that an injury would result from its disclosure and in light of the fact that the Certification has already been published on the internet.[2] In other words, "the horse has left the barn." The Court exercises its discretion to dispense with oral argument. Fed. R. Civ. P. 78; L. Civ. R. 78.1. The Court also exercises its discretion to decide 7-Eleven's motion before the scheduled return date and before defendants file their formal opposition to 7-Eleven's motion. Given the Court's ruling it would be a needless waste of time to wait for defendants' formal opposition papers. For the reasons to be discussed, 7-Eleven's motion is DENIED.

Background

7-Eleven filed its Sodhi complaint on June 14, 2013, and generally alleged that Sodhi materially breached his franchise agreements for six 7-Eleven stores. More particularly, 7-Eleven alleged that Sodhi did not accurately report his sales of money

---

[1] For good cause shown, and over defendants' objection, the Court temporarily sealed McCord's Certification on May 8, 2014 [Doc. No. 102]. Although 7-Eleven's motion was only filed in Sodhi, C.A. 13-3715 (MAS/JS), the case is consolidated for discovery and case management purposes with Younes, C.A. No. 13-3500 (RMB/JS) and Naik, C.A. 13-4578 (RMB/JS).

[2] See Defendants' May 7, 2014 Letter Brief ("LB") at 1 n.1, Doc. No. 101. Also, a quick Google search reveals other websites discussing and linking to McCord's Certification.

orders. As a result, 7-Eleven removed the money orders and associated equipment from Sodhi's stores. 7-Eleven's original complaint sought a declaratory judgment that its actions were legal and it was entitled to $150,000 in damages. Sodhi denied the allegations and asserted a counterclaim alleging 7-Eleven's actions were made in retaliation for his active involvement with the Franchise Owners Association. Sodhi also alleged that 7-Eleven is attempting to constructively terminate his franchises. Sodhi alleged that 7-Eleven breached the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1, et seq., and sought, inter alia, an award of damages and an injunction to prevent the termination of his franchises. 7-Eleven filed an amended complaint on June 26, 2013 [Doc. No. 7] naming Sodhi and his alleged co-conspirators, Manjinder Singh and Karamjit Singh. Amended Complaint ¶1. The amended complaint alleged that for at least the past four years Sodhi intentionally failed to report multiple hundreds of thousands of dollars of sales by manipulation of the cash registers. Id. ¶2. 7-Eleven averred that it "amassed irrefutable evidence … which establishes the intentional diversion of cash from the operation of the Stores, and egregious, illicit, labor practices." Id. ¶4. 7-Eleven further alleged that it terminated Sodhi's six Franchise Agreements without an opportunity to cure because of Sodhi's "egregious breaches." Id. ¶6. The amended complaint alleges,

3

inter alia, Sodhi committed fraud and that he violated RICO (18 U.S.C. §1961, et. seq.) and NJ RICO (N.J.S.A. 2C:41-1 et. seq.). 7-Eleven seeks at least $1 million in damages, a declaration that Sodhi's Franchise Agreements are terminated, and possession of Sodhi's stores. On July 3, 2013 [Doc. No. 16], the Honorable Michael A. Shipp entered an Order temporarily restraining the termination of Sodhi's franchises. On January 7, 2014, 7-Eleven withdrew its Motion for a Mandatory Preliminary Injunction. [Doc. No. 85]. Thereafter, at 7-Eleven's request, these three lawsuits involving 7-Eleven were consolidated for discovery and case management.

On May 5, 2014 [Doc. No. 98] Sodhi filed a discovery application pursuant to L. Civ. R. 37.1(b)(2) asking the Court to Order 7-Eleven to produce relevant discovery. In support of the application Sodhi attached McCord's Certification which has been described on the internet as a "bombshell." McCord worked as a Corporate Investigations Supervisor for 7-Eleven for seven months in 2013. Cert. ¶2. McCord alleges, inter alia, that 7-Eleven "implemented a predatory program to increase corporate profits by unethically stealing the equity and good will of its franchisees." Id. ¶5. McCord further alleges that 7-Eleven schemed to seize profitable stores without paying fair compensation, and that it would then resell the stores at an enormous profit. Id. ¶6. In addition, he alleges that 7-Eleven

4

developed a practice of "churning" its franchises which generated increased profits. Id. ¶¶12-14. McCord alleges that 7-Eleven maliciously targeted influential, outspoken franchisees such as Sodhi, and he was encouraged to "dig up dirt" on Sodhi. Id. ¶¶45-47, 153-160. McCord alleges he left 7-Eleven because he "could not be a weapon of vengeance for 7-Eleven executives" whose agenda was to "silenc[e] well respected franchisees who were rebelling against injustices they were enduring." Id. ¶162. McCord "feel[s] it is [his] duty to expose the injustices that [he] witnessed." Id. ¶165.

Not unexpectedly, 7-Eleven denies McCord's allegations and seeks to seal his Certification. 7-Eleven originally took the position that McCord's Certification should be sealed to protect "competitively sensitive business information." May 7, 2014 LB at 1, Doc. No. 99. It alleged that on May 6, 2013, McCord signed a "Confidentiality Statement" which required that he "safeguard [and] maintain the confidential nature of, and protect 7-Eleven's proprietary business information." Id. 7-Eleven alleged that plaintiff's counsel was obligated to request to seal McCord's Certification pursuant to the terms of the August 14, 2013 Discovery Confidentiality Order ("DCO") [Doc. No. 39].[3] 7-

---

[3] The DCO provides that parties may designate as "Confidential" discovery involving, inter alia, trade secrets and confidential business information. DCO ¶1. The parties may designate as "Attorney's Eyes Only" highly sensitive business information "likely to cause significant harm to an individual or to the business or competitive position of the designating party." Id. ¶2.

5

Eleven now argues that McCord's Certification should be sealed because it contains privileged attorney-client and work-product information.

Discussion

It is well established that there is "a common law public right of access to judicial proceedings and records." In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001). Thus, when a party files a motion to seal it must demonstrate that "good cause" exists for protection of the material at issue. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). Good cause exists when a party makes "a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" Id. The Third Circuit has explained that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (quoting Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)) (internal quotation marks omitted). The applicable requirements to seal documents are set forth in L. Civ. R. 5.3(c)(2), which requires that a motion to seal describe: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which

---

Confidential information may only be used for purposes of the prosecution or defense of the action (id. ¶3), and may only be seen by designated individuals. Id. ¶¶4, 7. All requests to seal documents must comply with L. Civ. R. 5.3. Id. ¶9. Importantly, "[n]o information that is in the public domain" shall be deemed or considered to be confidential material under the DCO." Id. ¶13.

warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available.

7-Eleven has now changed its argument in support of its request to seal. 7-Eleven originally argued that McCord's Certification should be sealed because it contained "sensitive business information." Now, however, 7-Eleven argues the Certification should be sealed because it allegedly contains attorney-client privileged and work-product information.[4] Brief at 3. ("The McCord Certification must be placed under seal because it reflects attorney-client communications and attorney work product coming from 7-Eleven's counsel."). Even assuming for the moment that the disclosure of privileged information in and of itself satisfies the criteria to seal a document pursuant to L. Civ. R. 5.3, which the Court is not finding, 7-Eleven has not even demonstrated that McCord's Certification contains privileged or work-product information. 7-Eleven's broad and unsubstantiated claims do not satisfy its burden of proof. Accordingly, 7-Eleven's motion to seal is denied.

It is axiomatic that a party who asserts a privilege or the work-product doctrine has the burden of proving its existence

---

[4] Although it is not certain, the Court assumes 7-Eleven changed its argument because it realized that the DCO only applies to discovery exchanged in the case. Defendants did not produce McCord's Certification in discovery but instead used it to support their discovery application.

and applicability. Zimmerman v. Norfolk Southern Corp., 706 F.3d 170, 181 (3d Cir. 2013); In re Grand Jury Subpoena, 745 F.3d 681, 693 (3d Cir. 2014). 7-Eleven has submitted no competent evidence to support its burden. Instead, it merely relies on the conclusory seven paragraph Declaration ("Decl.") of its outside counsel, Stephen Sussman, Esquire ("Sussman"). Sussman's Declaration provides no facts to support 7-Eleven's arguments but instead it merely sets forth broad boilerplate assertions. For example, Sussman avers that "[t]he McCord Certification contains assertions reflecting and revealing 7-Eleven's privileged attorney-client communications and attorney work product." Decl. ¶3. He also avers that McCord's Certification "contains privileged information, attorney-client communications, litigation strategy and work product that was developed by counsel." Id. ¶4. As is evident from these examples, Sussman does not set forth a single fact to support his conclusions. Broad boilerplate assertions are insufficient to establish that a privilege exists. Torres v. Kuzniasz, 936 F. Supp. 1201, 1215 (D.N.J. 1996). As noted by the Third Circuit, "[t]he indiscriminate claim of privilege may in itself be sufficient reason to deny it." Further, when a court is "faced with such a claim [it] cannot make a just or reasonable determination of its validity." United States v. O'Neill, 619 F.2d 222, 227 (3d Cir. 1980).

The same thing is true regarding 7-Eleven's burden to show that a "clearly defined and serious injury" would result if McCord's Certification is not sealed. Sussman merely concludes that if the information in the Certification is disclosed "it could have significant impact on the [sic] 7-Eleven." Decl. ¶5. This sort of general and conclusory statement is anathema to the strict requirements in L. Civ. R. 5.3(c)(2)(c). "The claimed injury must be specifically stated because broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause standard." Locascio v. Balicki, C.A. No. 07-4834 (RBK), 2011 WL 2490832, at *6 (D.N.J. June 22, 2011)(citation and quotation omitted); Opperman v. Allstate New Jersey Ins. Co., C.A. 07-1887 (RMB/JS), 2009 WL 3818063, at *10 (D.N.J. Nov. 13, 2009)(denying motion to seal and stating "Allstate has not overcome the strong public interest in transparent judicial proceedings by its mere generalized assertions (even if made by affidavit) that the materials are confidential and proprietary"); O'Brien v. BioBancUSA, C.A. 09-2289 (RBK/KMW), 2010 WL 2923283, at *4 (D.N.J. July 19, 2010)(despite the fact that the document at issue was covered by a confidentiality agreement, request to seal denied where plaintiff merely provided a general cursory summary of the harms that would result from disclosure). The Court understands that just like the allegations 7-Eleven makes

9

against defendants in the complaint, the allegations in McCord's Certification may or may not be accurate and could be embarrassing. However, it is well established that public embarrassment without any evidence of other harm is not a clearly defined and serious injury. Cipollone, 785 F.2d at 1121; Shine v. TD Bank Financial Group, C.A. No. 09-4377 (RBK/KMW), 2011 WL 3328490, at *8-9 (D.N.J. Aug. 2, 2011).

Sussman's Declaration is also deficient because it does not comply with L. Civ. R. 7.2(a) which requires that affidavits, declarations and certifications "shall be restricted to statements of fact within the personal knowledge of the signatory." Sussman's Declaration does not attest to the fact that he has personal knowledge of the facts establishing a privilege or the alleged "significant impact" (id. ¶5) that would result if McCord's Certification is disclosed. Therefore, the Declaration is deficient and will be disregarded. See Fowler v. Borough of Westville, 97 F. Supp. 2d 602, 607 (D.N.J.)(submissions in affidavits not based on personal knowledge will not be considered); Brennan v. Elizabeth Bd. of Ed., Civ. No. 07-329, 2008 U.S. Dist. LEXIS 21609, at *8-9 (D.N.J. March 19, 2008)(affidavit containing information beyond the attorney's personal knowledge stricken). The provisions of L. Civ. R. 7.2 are not merely applicable to affidavits but also apply to declarations and certifications. Penn v. Wal-Mart

10

Stores, Inc., 116 F. Supp. 2d 557, 560-61 n.3 (D.N.J. 2000)("This [r]ule applies to certifications as well"); Cannon v. Cherry Hill Toyota, 190 F.R.D. 147, 154 (D.N.J. 1999); Assisted Living Assoc. V. Moorestown Twp., 996 F. Supp. 409, 442 (D.N.J. 1998).[5]

Moreover, even if McCord's Certification contained privileged information that would cause a serious injury if disclosed, which the Court is not finding, 7-Eleven's motion would still be denied. Rightly or wrongly, McCord's Certification has already been published and is available on the internet. Thus, even if the Court granted 7-Eleven's motion, which it is not, McCord's Certification would still be available to anyone who wanted to see it. The Court will not undergo the pointless exercise of sealing a document that is and will continue to be publicly available. "It is well established that once confidential information has been published, it is no longer confidential." Janssen Products, L.P. v. Lupin Ltd., C.A. No. 2:10-05954 (WHW), 2014 WL 956086, at *3 (D.N.J. March 12, 2014)(collecting cases). Like the Court in Janssen Products, the Court does "not have the power to put the genie back in the

---

[5] Sealing McCord's entire Certification is also not the least restrictive alternative. See L. Civ. R. 5.3(c)(2)(d). It is undoubtedly true that not every averment in McCord's Certification is privileged. For example, his personal background and other publicly available information. Nevertheless, 7-Eleven seeks to seal the entire Certification. "Where a less restrictive alternative exists, a motion to seal will fail." Lite, N.J. Federal Practice Rules, Comment 2.b. to L. Civ. R. 5.3 at 35 (Gann 2014 ed.).

11

bottle." Id. McCord's Certification is now irretrievably part of the public record even if the Court grants 7-Eleven's motion. A sealing Order at this time would be pointless.[6]

Conclusion

    Accordingly, for all the foregoing reasons, it is hereby ORDERED this 15th day of May, 2014, that 7-Eleven's Motion to Seal Kurt McCord's Certification [Doc. No. 98-2] is DENIED. The Clerk of the Court is directed to immediately unseal Doc. No. 98-2 that was temporarily sealed.[7]

                                      s/Joel Schneider
                                      JOEL SCHNEIDER
                                      United States Magistrate Judge

---

[6] The Court makes it clear that it is not weighing in on the truth or accuracy of the accusations in McCord's Certification. It merely concludes that the Certification will not be sealed.

[7] Ordinarily the Court would stay enforcement of its Order to give 7-Eleven time to appeal pursuant to L. Civ. R. 72.1(c). However, given that McCord's Certification is available on the internet, the Court finds that an appeal would be fruitless. The reason the temporary seal was entered was to give the Court a fair opportunity to decide if McCord's Certification genuinely deserved to be sealed. Now that the decision has been made, the temporary seal should be removed.