**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 7-ELEVEN, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>KARAMJEET SODHI, et al.,<br><br>      Defendants. | Civil Action No. 13-3715 (MAS) (JS)<br><br>**OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on the application of Plaintiff 7-Eleven, Inc. ("Plaintiff" or "7-Eleven") for preliminary restraints, requesting, inter alia, that the Court enjoin Defendants Karamjeet Sodhi, Manjinder Singh, and Karamjit Singh ("Defendants") from occupying and operating five 7-Eleven franchises. 7-Eleven asserts that Defendants committed incurable breaches of their franchise agreements, that 7-Eleven lawfully provided notice of its termination of the franchise agreements, and that, as a result, Defendants should be compelled to vacate and surrender the properties at issue. (*See* Pl.'s Moving Br. 1-6, ECF No. 293-13.) Plaintiff also requests leave to file a second amended complaint containing allegations describing Defendants' recent conduct. Defendants oppose the request for an injunction, arguing that Plaintiff's proofs are either factually flawed or affirmative misrepresentations. (*See* Defs.' Opp'n Br. 1-3, ECF No. 319.)

  The Court, upon receiving Plaintiff's emergent application, denied its request for a temporary restraining order and scheduled a hearing on the request for a preliminary injunction (the "Hearing"). (ECF No. 297.) The Hearing commenced on April 20, 2015 (ECF No. 335);

Defendants, however, due to lack of preparation, requested that the Hearing be postponed (Hr'g Tr. 109:17-18, Apr. 20, 2015, ECF No. 377 ("4/20 Tr.")), and in light of apparent scheduling complications, the Hearing was rescheduled to resume on May 20, 2015. The Hearing was continued on May 20[1] and 21 and concluded on May 27, 2015. (ECF Nos. 388-89, 392.) During the course of the Hearing, Plaintiff offered the testimony of Joseph B. Nelson, 7-Eleven's retained forensic accountant (4/20 Tr. 16:22-23, 22:20), and Richard Overshown, the Manager of Lottery Accounting for 7-Eleven (Hr'g Tr. 96:9-10, 97:7-8, May 21, 2015, ECF No. 409 ("5/21 Tr.")); Defendants did not offer any witness testimony.

Following the conclusion of the Hearing, at Plaintiff's request, the Court ordered the record on the application for restraints closed. (ECF Nos. 396, 400.)[2] In addition, the Court ordered the submission of a post-Hearing brief from both Plaintiff and Defendants by June 8 and 22, respectively (ECF No. 400); upon the request of the parties, the Court extended the time for the submission of Defendants' brief to July 1 and permitted the submission of a reply brief from Plaintiff by July 15 (ECF No. 435). The Court, having reviewed the parties' submissions and received the parties' evidence offered at the Hearing, denies Plaintiff's application for a preliminary injunction but grants its request for leave to file a supplemental complaint.

---

[1] On April 29, 2015, via correspondence to the Court, Plaintiff formally requested that the Court consolidate its decision on the preliminary injunction with a decision on the merits and consider the imposition of a permanent injunction. (ECF No. 342.) At the resumption of the Hearing on May 20, the Court denied Plaintiff's request in light of the variety of other claims brought by Plaintiff (but not put at issue by the injunction). (Hr'g Tr. 2:19-3:7, May 20, 2015, ECF No. 408 ("5/20 Tr.").)

[2] Despite the Court's Order, Defendants, in their post-hearing brief and other submissions, sought to supplement the record with additional evidence. (ECF Nos. 444, 484.) Plaintiff, in its reply brief, noted the improper attempts to supplement and requested that the Court disregard the additional evidence. (ECF No. 452.) Less than two weeks later, despite having just brought attention to Defendants' improper attempts to supplement, Plaintiff attempted to supplement the record with additional evidence in support of its application. (ECF Nos. 483, 485.) All of these additional submissions as well as subsequent, more recent submissions, have not been considered.

## I.  Background

This case involves a dispute between 7-Eleven and one of its franchisees. 7-Eleven alleges that Sodhi, a 7-Eleven franchisee of six individual stores, and his employees engaged in conduct in violation of the franchise agreements governing the stores. 7-Eleven has brought suit against Defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), its New Jersey analog, N.J.S.A. 2C:41-2.d, and trademark infringement, as well as various common law claims, including breach of the respective franchise agreements. Plaintiff alleges that Defendants engaged in a scheme to underreport gross sales and thus deprived 7-Eleven of its share of those revenues in violation of the franchise agreements. Plaintiff brought suit in June 2013 (ECF Nos. 1, 7), and the action was consolidated with similar suits involving 7-Eleven for the purposes of discovery and case management (ECF No. 93).

Earlier in the course of this litigation, Plaintiff requested nearly the same injunctive relief that is the subject of the instant application. Plaintiff moved for a preliminary injunction in July 2013, seeking to compel Defendants to vacate all six of the stores. (ECF No. 31.) However, prior to the Court's decision on that motion, in October 2013, Plaintiff withdrew its motion and stipulated to treating the six stores' franchise agreements as in effect, which the Court so-ordered. (ECF Nos. 73, 85.) Of special importance to the instant request, the stipulation and subsequent order ("2013 Order") required that 7-Eleven continue financing the operation of the six stores pursuant to each store's franchise agreement.

Plaintiff now renews its request for injunctive relief. Plaintiff claims that Sodhi's conduct has resulted in a breach of the franchise agreements for five of the six stores he operates ("Franchise Agreements" and "Stores") and resulting infringement of its trademarks. More specifically, Plaintiff asserts that Sodhi has wrongfully taken funds received from sales as an

3

"additional draw," causing the positive equity, or Net Worth as defined in the Franchise Agreements, of the Stores to fall below a contractually obligated threshold level. Three of the Stores must maintain a Net Worth of $10,000; the fourth and fifth, $15,000. According to financial data compiled by 7-Eleven, in November 2014, the collective Net Worth of the Stores was $165,000 below the required minimum; by February 2015, the Stores' collective Net Worth was $270,000 below the required minimum. As a result of Sodhi's failure to maintain the requisite Net Worth in the Stores, on December 31, 2014, 7-Eleven sent five notices of material breach to Sodhi, one for each of the five Stores, for which Sodhi acknowledged receipt. According to Plaintiff, as a result of these notices and Sodhi's acknowledged receipt, the Franchise Agreements terminated effective March 13, 2015, entitling 7-Eleven to immediate possession of the Stores, and Sodhi's continued operation of the Stores without authorization under the Franchise Agreements constitutes trademark infringement.

Based on the above, 7-Eleven now requests that the Court enter an injunction requiring Defendants to surrender possession and vacate the Stores and that the Court grant it leave to file a second amended complaint detailing the above. In addition, 7-Eleven requests that the Court enter an injunction allowing it to discontinue financing the operation of Sodhi's stores, as is required under the Franchise Agreements.

## II. Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs the imposition of injunctive relief in federal court. Rule 65 "empowers district courts to grant preliminary injunctions." *Doe v. Banos*, 713 F. Supp. 2d 404, 410 (D.N.J.), *aff'd*, 416 F. App'x 185 (3d Cir. 2010). "Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)

4

(quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). Injunctive relief is inappropriate "when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks omitted). In determining whether to grant preliminary injunctive relief, courts look to several factors:

> [a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These equitable factors are just that—factors to be balanced against one another. All of these factors need not be considered by the Court, if the factors considered are dispositive; however, an injunction shall not issue absent a showing of both a likelihood of success on the merits and a likelihood of irreparable harm. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). In evaluating these factors, the Court must eschew categorical rules in favor of the application of traditional equitable principles, which look to the specific circumstances present in each individual case. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-94 (2006); *see also* James M. Fischer, *Remedies* § 20.1 (3d ed. 2014) ("Equity derives from the ideal that a judgment should be based on the particulars of the person and the situation."). The moving party bears the burden of showing entitlement to injunctive relief. *Ferring Pharm.*, 765 F.3d at 210.

### III. Discussion

#### A. Likelihood of Success on the Merits

Plaintiff bases its request for an injunction on its claim for breach of the Franchise Agreements, which, according to Plaintiff, entitled it to terminate its relationship with Sodhi, and Sodhi's resulting infringement of its trademarks. Accordingly, the Court must evaluate Plaintiff's

5

likelihood of success on those claims. "To prove a breach of contract under New Jersey law, 'a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result.'" *Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685, 688 (3d Cir. 2014) (quoting *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)). Defendants have not challenged the validity of the Franchise Agreements; rather, in their prehearing submission, throughout the hearing, and in their post-hearing submission, Defendants argued that 7-Eleven has failed to put forth reliable evidence—or rather has only put forth incredible evidence or false testimony—of Sodhi's breach of the Franchise Agreements. More specifically, Defendants assert that "7-Eleven's [f]inancial [d]ata [c]annot be [t]rusted," certifications in support of the application are made without personal knowledge, and that counsel for 7-Eleven has made false representations to the Court and thus counsel's certifications in support of the application should be disregarded. (Defs.' Opp'n Br. 14.)

In order to show a likelihood of success on the merits, 7-Eleven must first show that it is likely that Defendants breached the Franchise Agreements. The Franchise Agreements require each Store to maintain a Minimum Net Worth, defined as "the difference between the Store's total assets and the Store's total liabilities, all of which are as reflected on the balance sheet that [7-Eleven] prepare[s] for the Store each Accounting Period as derived from the Bookkeeping Records." (Avenue C Franchise Agreement, Ex. E, Definitions, ECF No. 331-4.)[3] Here, of the five stores at issue, three of the Stores' Franchise Agreements require the maintenance of a Net

---

[3] Although Plaintiff offered all of the Stores' Franchise Agreements as evidence at the Hearing for this matter, for the sake of convenience, the Court will refer to only one of the Franchise Agreements here (the Avenue C Store), as they are identical in all material respects, other than the amount of Net Worth required. As a result, the Court's interpretation of the terms of the Avenue C Franchise Agreement is applicable to the remaining Franchise Agreements.

Worth of $10,000, and two require a Net Worth of $15,000. (Declaration of Wade Newman ("Newman Decl.") ¶ 27, ECF No. 293-1.) Additionally, the Franchise Agreements provide that the failure to maintain the Minimum Net Worth[4] constitutes a material breach of the agreement, allowing 7-Eleven to terminate the Franchise Agreement upon three days' notice and subject to Sodhi's right to cure within those three days. (Avenue C Franchise Agreement ¶ 26(a)(4)(a).) The Franchise Agreements further provide that "[u]pon the . . . termination of [the Franchise Agreement], . . . you agree to . . . [i]mmediately and . . . peaceably surrender the Store." (*Id.* ¶ 28(a)(1).)

7-Eleven has adequately demonstrated a likelihood of success on the merits of its breach of contract claim—that is, it has shown that it is likely that Defendants breached the Franchise Agreements. In its prehearing submission and at the Hearing, 7-Eleven provided detailed financial information for all of the Stores, evidencing a Net Worth below the Minimum Net Worth required for each Store. As of December 31, 2014, the date on which 7-Eleven sent the notices of termination of the Franchise Agreement (7-Eleven, Inc. Hr'g Ex. ("SEI Ex.") 7, ECF No. 331-38), the Net Worth for the Stores was as follows:

- Avenue C Store: ($31,956.17)[5]; Minimum Net Worth: $10,000

- Store # 32771 ("Route 9 Store"): ($6,878.55); Minimum Net Worth: $10,000

- Store # 32896 ("Florida Grove Road Store"): ($9,135.67); Minimum Net Worth: $10,000

- Store # 34296 ("Lindbergh Road Store"): ($50,863.80); Minimum Net Worth: $15,000

---

[4] The Court will refer to the required Net Worth for each of the Stores as the "Minimum Net Worth," as it is defined in the Franchise Agreements.

[5] A dollar figure in parenthesis indicates a negative value.

7

- Store # 34531 ("Roosevelt Ave. Store"): ($33,333.08); Minimum Net Worth: $15,000

(SEI Ex. 2, ECF No. 331-19.) As of March 2015, all but one of the Stores' negative equity position grew larger, and all of the Stores remained in breach of their respective Minimum Net Worth requirements. (*See id.*) Based on this information, it is plain that Defendants, as of December 2014, were in breach of the Franchise Agreements. Further, 7-Eleven, by providing notices of termination, in advance of termination, complied with the provision of the Franchise Agreements that provide Defendants with a right to cure.[6]

While Defendants have gone to great lengths to suggest something untoward about Plaintiff's financial records and the testimony offered by Mr. Nelson (and have employed colorful rhetoric in doing so), they have not offered contrary financial records, nor have they specifically disclaimed that the Net Worth of any of the Stores has been maintained at the threshold levels required under the Franchise Agreement.[7] On the other hand, Mr. Nelson's testimony regarding 7-Eleven's internal accounting system and audit processes was both comprehensive and thorough and did not suggest any possibility for error or wrongdoing (other than those explicitly disclosed and accounted for). (*See generally* 4/20 Tr. 39:9-109:15.) Further, the Court, having received Mr. Nelson's testimony regarding the Plaintiff's accounting system and his professional opinion, as an experienced forensic accountant, that 7-Eleven's accounting and internal audit processes are both

---

[6] The Franchise Agreements provided that Sodhi would be able to cure a breach of the Minimum Net Worth provision for three days following notice of termination. 7-Eleven, in contemplation of New Jersey's Franchise Practices Act, N.J.S.A 56:10-5, provided sixty days' advance notice of termination in its notices of termination. (*See* SEI Ex. 7.)

[7] Instead, Defendants submit, along with their post-hearing submission and after the close of the record on the application for preliminary restraints, financial statements indicating that the Stores' Net Worth deficit "has decreased," implicitly admitting that they are in fact still in breach of the Franchise Agreements. (*See* ECF No. 449.)

"accurate and transparent" and that 7-Eleven has not taken any action to falsify or manipulate its records, credits that testimony. (*See id.* at 56:22-57:8, 86:4-87:14, 88:9-89:16, 90:21-91:14.)

In a last ditch effort, Defendants assert, in their post-hearing submission, that 7-Eleven's witnesses, Mr. Nelson and Mr. Overshown, as expert witnesses, did not provide any factual testimony that would support a likelihood of success on the merits. Defendants, however, ignore that Plaintiff has submitted voluminous documentary evidence, both before and during the Hearing, which unambiguously and conclusively demonstrate a likelihood of success on the merits of Plaintiff's breach of contract claim.

Because Plaintiff's application largely relies on Sodhi's alleged unauthorized use of its marks to establish irreparable injury, Plaintiff must also demonstrate that Defendants are likely committing trademark infringement. Plaintiff's amended complaint asserts a claim for trademark infringement and unfair competition under the Lanham Act, specifically under 15 U.S.C. §§ 1114 and 1125. (Am. Compl. ¶ 161, ECF No. 7.) "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). The first element, validity and protectability, can be established either by demonstrating incontestability or proof of the mark's distinctiveness or secondary meaning. *Id.* "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Id.* at 472 n.7; *see also* 15 U.S.C. § 1015.

9

Here, Plaintiff is likely to succeed on its claim of trademark infringement. At least some of the marks identified by Plaintiff, which are used in all traditional franchised 7-Eleven stores like Sodhi's (Newman Decl. ¶ 10), are incontestable,[8] which provides prima facie evidence of validity, protectability, and ownership. *See Opticians Ass'n of Am. v. Ind. Opticians of Am.*, 920 F.2d 187, 192-93 (3d Cir. 1990); *see also* § 1115. In addition, because the Court has already determined that it is likely that Defendants breached the Franchise Agreements and that Plaintiff properly terminated the Franchise Agreements, Defendants' continued use of the marks will create confusion as to the source of the products sold. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998). Accordingly, Plaintiff has established a likelihood of success on both claims.

### B. Irreparable Harm

Another essential factor in determining whether to grant an injunction is whether the moving party will suffer an irreparable harm were the injunction not granted. "Irreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n*, 920 F.2d at 195 (internal quotation marks omitted). "[A] party bringing a claim under the Lanham Act is not entitled to a presumption of irreparable harm when seeking a preliminary injunction and must demonstrate that irreparable harm is likely." *Ferring Pharm.*, 765 F.3d at 206. Accordingly, under *Ferring*, a court cannot presume the existence of irreparable harm but instead must rely on record evidence demonstrating irreparable harm. *See Ferring Pharm.*, 765 F.3d at 216 (citing *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th

---

[8] The Court takes judicial notice of the marks' registrations. *See Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 319 n.7 (D.N.J. 2006).



Cir. 2013) (reversing where "district court's analysis of irreparable harm [was] cursory and conclusory, rather than . . . grounded in any evidence or showing by [the moving party]").

Here, Plaintiff has not satisfied its burden. Plaintiff relies primarily on two forms of harm: harm to reputation as evidenced by customer complaints and harm to the property stemming from Defendants' unauthorized occupation of the Stores. The Court agrees with Plaintiff that both forms of harm are potential bases for a showing of irreparable harm. Although there is no longer any sort of presumption of harm in trademark infringement cases, the same harm that typically flows from the unauthorized use of a trademark still exists, namely harm to reputation. *Cf. Opticians Ass'n*, 920 F.2d at 195. In addition, the loss of unique property may also support a finding of irreparable harm in some circumstances. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996). The fact that these harms are the type of harm that may support temporary injunctive relief, however, does not mean that these harms are present in the circumstances of this case. *See Ferring Pharm.*, 765 F.3d at 216 ("[A] presumption of irreparable harm deviates from the traditional principles of equity, which require a movant to demonstrate irreparable harm . . . ."). Indeed, Plaintiff has not sufficiently demonstrated that these forms of harm have occurred or are likely to occur.

In support of the first form of harm, harm to reputation, the only evidence provided by Plaintiff evidencing irreparable harm are complaints from various customers regarding one Store. Plaintiff submitted into the record at the Hearing a total of seven complaints made by visitors to the Lindbergh Road Store[9] that describe the poor condition of the bathrooms as well as other deficiencies common to convenience stores. (Decl. of Asif Khalid ¶ 20, ECF No. 158-2; *See also*

---

[9] In its post-hearing brief, Plaintiff offers four additional customer complaints from the Lindbergh Road Store, all of which were made prior to the close of evidence, which, again, was closed on the request of Plaintiff. The Court disregards this late-offered evidence.

11

SEI 27-30.) For one, these complaints come from one Store only, making it impossible for the Court to grant an injunction on this ground for all of the Stores. In addition, many of the complaints submitted by Plaintiff were made prior to Defendants' likely breach of the Franchise Agreement, implying that there has been no change in Plaintiff's reputation, at least with respect to the Lindbergh Road Store. Further, there is no way of knowing whether these sorts of complaints have occurred at other 7-Eleven stores nationwide. As a result, the Court finds that this evidence does not carry Plaintiff's burden.

With regard to Plaintiff's other proffered form of irreparable harm, harm stemming from Defendants' unauthorized use of Plaintiff's real property, Plaintiff has offered no factual evidence supporting irreparable harm. While Plaintiff has cited to a series of non-binding cases that primarily rely on a presumption of harm[10] and offered expert testimony on the hypothetical harms that might occur,[11] it has offered no evidence whatsoever regarding the nature of the properties at issue. Nor has Plaintiff offered any evidence of harm that has occurred or a factual basis for why harm is likely to occur to the properties at which the Stores are located, much less explained why any potential harm cannot be rectified with money damages. Accordingly, Plaintiff has not sustained its burden of demonstrating irreparable harm, on this basis or otherwise.

---

[10] *See, e.g., Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011) ("As for the adequacy of potential remedies, it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm *as a matter of law*, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute."). These sorts of presumptions related to property rights were explicitly dispelled in *eBay*. *See* 547 U.S. at 391-94. Moreover, *Brooklyn Heights* is distinguishable on its facts, as it with dealt the prospect of irreparable damage to a historic landmark. 777 F. Supp. 2d at 435-36. "[C]itation to a different case with a different record does not meet the standard of showing 'likely' irreparable harm." *Herb Reed Enters.*, 736 F.3d at 1250.

[11] (4/20 Tr. 105:15-109:13.)

### C. Balance of Equities

The third factor relevant to the instant inquiry is whether Defendants may suffer greater harm if a preliminary injunction is granted. While Defendants will undoubtedly suffer financial harm from the imposition of a preliminary injunction, "[t]he self-inflicted nature of [that] harm" must be considered in evaluating this prong. *Pappan*, 143 F.3d at 806. Here, all harms purportedly to be suffered by Defendants stem from their likely breach of the Franchise Agreements and the subsequent termination of those agreements. Plaintiff, however, has not demonstrated that it will suffer irreparable harm in the absence of an injunction. Accordingly, the Court finds that this factor is neutral.

### D. Public Interest

The final factor to be considered in resolving a request for preliminary injunction is the public interest. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Id.* at 807 (internal quotation marks omitted). While Defendants have focused much of their arguments against the injunction on the public interest factor and the public's interest in prohibiting abusive franchisor-franchisee relationships and discrimination, Defendants, despite having ample opportunity, have not offered persuasive evidence demonstrating those concerns here. Rather, again, based on Plaintiff's strong showing with regard to likelihood of success on the merits, the Court finds that the public interest favors the imposition of an injunction based on the public's interest in enforcing contractual duties.

### E. Preliminary Injunction

Based on the above, the Court finds that Plaintiff has not carried its burden of demonstrating its entitlement to a preliminary injunction against Defendants, requiring Defendants

to vacate the Stores. Although a majority of the factors weigh in favor of an injunction, Plaintiff's failure to demonstrate irreparable injury based on Defendants' likely breach of the Franchise Agreements is fatal. *Campbell Soup Co.*, 977 F.2d at 91 ("In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." (internal quotation marks omitted)).[12]

## IV. Modification of 2013 Order

In addition to an injunction against Defendants to vacate the Stores, Plaintiff asks that the Court issue an injunction "to permit it . . . to discontinue the financing of the operation of all of Sodhi's stores." (Pl.'s Br. 4, ECF No. 293-14.) Plaintiff asserts that it would have ceased financing Defendants' stores but for the 2013 Order. As previously discussed, earlier in this litigation, Plaintiff executed a signed stipulation with Defendants that required the parties to continue treating the Franchise Agreements as in effect, including the financing of Defendants' stores, which the Court so-ordered at its request. (ECF Nos. 69-70, 72-73.) As a result, in conjunction with its request for an injunction permitting it to discontinue financing, Plaintiff requests an order modifying the 2013 Order.

In part, this portion of Plaintiff's requested relief asks, in essence, for a declaration of 7-Eleven's rights under the Franchise Agreement—i.e., its potential right to discontinue its financing of Defendants' stores. Plaintiff's request does not ask the Court to restrain Defendants from engaging in conduct or require Defendants to engage in some affirmative act. Rather, it asks the Court to give it permission to engage in conduct it believes it is entitled to engage in under the

---

[12] Because Plaintiff has not sustained its burden, the Court need not address Defendants' arguments regarding equitable defenses, namely unclean hands and laches.

terms of the Franchise Agreements. As is plain from the language of Plaintiff's request, it is more appropriately brought as a request for declaratory relief. While Plaintiff has plead such a request in its complaint, the Court declines to grant summary adjudication on that portion of the complaint on an application for preliminary injunctive relief. The Court does, however, find it appropriate to require Defendants to post a bond. Based on a careful consideration of the record, the Court finds a bond in the amount of five hundred thousand dollars ($500,000) to be appropriate.

## V. Motion to Amend/Supplement

Plaintiff seeks leave to file a second amended complaint, adding additional allegations and an additional claim for breach of the Franchise Agreements premised on Defendants' failure to satisfy the agreements' Net Worth requirements. Plaintiff's proposed pleading is better characterized as a supplemental pleading, as the additional allegations contained within address only events occurring after the filing of its initial pleading. *See* Fed. R. Civ. P. 15(d). Defendants, in their prehearing submission to the Court, expressly state that they do not oppose Plaintiff's request to file its proposed pleading, so long as Defendants are given a similar opportunity to amend their counterclaim. (Defs.' Opp'n Br. 1 n.1, ECF No. 319.) Rule 15(d), however, which addresses supplemental pleadings, does not contain a provision analogous to that contained in 15(a) allowing for supplemental pleadings on consent. *See* Fed. R. Civ. P. 15(a), (d).

The Court finds that Plaintiff is entitled to leave to supplement its active pleading. "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Rule 15(d) is subject to the same liberal standards applicable under 15(a), and "[l]eave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants,

or futility, and when the supplemental facts are connected to the original pleading." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360-61 (D.N.J. 2000). Here, Plaintiff's new allegations are neither futile nor disconnected from the underlying basis for the suit as a whole. Further, there is no basis to believe the proposed supplemental pleading is offered for a bad faith motive. Accordingly, the Court grants Plaintiff's request for leave to file a supplemental pleading.

The Court, however, does not find that Defendants are entitled to file a revised counterclaim sight unseen. "Under Fed. R. Civ. P. 15(d), the trial court determines whether a responsive pleading is advisable." *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979). In this case, the parties and their attorneys have exhibited an unusual level of acrimony, particularly in the conduct of discovery; additional claims or counterclaims, providing additional areas for discovery and inevitable disputes and prolonging the matter, should not be permitted without a necessary basis. Accordingly, the Court determines that, after Plaintiff has filed its supplemental pleading, Defendants, within fourteen days, must either (1) file a responsive pleading, responding to the allegations contained within the supplemental pleading under Rule 8 of the Federal Rules of Civil Procedure, or (2) file a motion for leave to file an amended counterclaim.

## VI.   **Conclusion**

Accordingly, for the above reasons, Plaintiff's application for a preliminary injunction is denied. The Court, however, finds good cause to require Defendants to post a bond in the amount

of $500,000. In addition, Plaintiff's request to file a supplemental pleading is granted. An order reflecting the above determinations will issue today.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: February 9, 2016