**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| 7-ELEVEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> KARAMJEET SODHI, et al., <br><br> Defendants. | Civil Action No. 13-3715 (MAS) (JS) <br><br> **OPINION** |

**SHIPP, District Judge**

This matter arises from Plaintiff 7-Eleven, Inc.'s ("Plaintiff" or "7-Eleven") claim that Defendants Karamjeet Sodhi ("Mr. Sodhi"), Manjinder Singh, and Karamjit Singh (collectively, "Defendants") committed incurable breaches of Mr. Sodhi's franchise agreements with Plaintiff. (*See generally* First Am. Compl.,[1] ECF No. 7.) In response to these allegations, Defendants asserted the following four counterclaims: (1) violation of the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 ("NJFPA"); (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"); and (4) violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 ("NJLAD"). (ECF No. 11.) This matter comes before the Court on 7-Eleven's motion for summary judgment on Defendants' counterclaims and on its request for a declaratory judgment that Mr. Sodhi's franchise agreement has been properly terminated. (ECF No. 500.) Defendants filed opposition (ECF No. 507), and

---

[1] With leave from the Undersigned (ECF No. 524), Plaintiff filed a Second Amended Complaint (ECF No. 525) on February 16, 2016. Although the amendments are not relevant to the motion sub judice, the Court notes that the Second Amended Complaint is the operative pleading.

Plaintiff replied (ECF No. 517). The Court, having considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's motion for summary judgment is granted.

## I. Background[2]

### A. 7-Eleven Franchise

7-Eleven operates, franchises, and licenses the 7-ELEVEN chain of convenience stores. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF")[3] ¶ 5, ECF No. 500-2.) Pursuant to its franchise agreements, 7-Eleven allows its franchisees to use the 7-ELEVEN trademarks and trade names in connection with their operation, advertising, and identification of convenience stores. (*Id.* ¶ 6.) In return, 7-Eleven receives a percentage of the "gross profits" (net sales less cost of goods sold) obtained from the operation of the convenience stores. (*Id.* ¶ 8.)

### B. Mr. Sodhi's 7-Eleven Stores

Since 2001, Mr. Sodhi has been a 7-Eleven franchise operator. (Am. Countercl. ¶ 10, ECF No. 11.) Mr. Sodhi currently owns the following six 7-Eleven convenience stores ("Stores"):

| Store No. | Address |
|---|---|
| 2412-21958C | 1200 South Avenue W. and Crossway Place, Westfield, New Jersey 07090 (the "Crossway Place" store) |
| 2412-32260A | 463-467 Avenue C, Bayonne, New Jersey 07002 (the "Avenue C" store) |
| 2413-32771A | 1189 Route 9 North, Old Bridge, New Jersey 08857 (the "Route 9" store) |
| 2413-32896A | 527 Florida Grove Road, Perth Amboy, New Jersey 08861 (the "Florida Grove Road" store) |

---

[2] The Court assumes familiarity with the facts set forth in its decision on Plaintiff's Motion for a Preliminary Injunction (ECF No. 523), and includes only those facts relevant to the motion sub judice.

[3] Unless otherwise indicated, Defendants do not dispute the facts cited in Plaintiff's Statement of Undisputed Material Facts. (*See* Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts. ("Defs.' RSOF"), ECF No. 508.)

| 2412-34296A | 100 Lindbergh Road, Newark, New Jersey 07114 (the "Lindbergh Road" store) |
| --- | --- |
| 2413-34531A | 1299 Roosevelt Avenue, Carteret, New Jersey 07008 (the "Roosevelt Avenue" store). |

(Pl.'s SOF ¶ 3.) Mr. Sodhi testified that: his work at the Stores is "very minimal"; for the last five to six years he has spent about twenty to twenty-five hours a week in the Stores and he does not work on 7-Eleven business outside the Stores; his management of the Stores was "totally hands off"; he did not have a regular schedule and rather "just drop[s] by when it is convenient"; he and his managers have control over the prices charged for merchandise sold in the Stores; he receives a percentage of the gross profit from the sale of merchandise at the Stores; and his time was "monopolized" by his other business ventures. (Decl. of Susan V. Metcalfe, Ex. 1 ("Sodhi Tr.") 43:20-44:6, 46:8-10, 46:15-18, 63:24-64:4, 452:13-19, ECF No. 501-1.)[4] Based on the net income reported by Mr. Sodhi to 7-Eleven, Mr. Sodhi earned in excess of a million dollars from the operation of the Stores in 2011 and 2012, and he earned close to one million dollars from the operation of the Stores in 2013. (Pl.'s SOF ¶ 53.)[5]

---

[4] To the extent that there are inconsistencies between Mr. Sodhi's declaration and his deposition testimony, the Court affords greater reliability to Mr. Sodhi's deposition testimony. *See Cho v. Park*, No. 06-4533, 2008 WL 2967623, *3 (D.N.J. July 25, 2008) ("[A] deposition is accorded more reliability than an affidavit.") (citing *In re CitX Corp., Inc.*, 448 F.3d 672, 680 (3d Cir. 2006).

[5] Local Civil Rule 56.1 ("Rule 56.1") provides that "[t]he opponent of summary judgment shall furnish . . . a responsive statement of material facts, addressing each paragraph of the movant's [Rule 56.1] statement, indicating agreement or disagreement and, if not agreed, *stating each material fact in dispute and citing to affidavits and other documents submitted in connection with the motion*[.]" L. Civ. R. 56.1 (emphasis added). In their response to several paragraphs of Plaintiff's Rule 56.1 Statement, Defendants state only "Disagreed." (*See, e.g.*, Defs.' RSOF ¶¶ 21, 36, 40, 50, 53, 79.) Accordingly, pursuant to Rule 56.1, the Court shall deem these facts undisputed. In addition, in response to several other paragraphs, Defendants provide boilerplate, conclusory assertions regarding 7-Eleven's alleged control over Mr. Sodhi's business. (*See id.* ¶¶ 11, 12, 15-18, 20, 22, 26, 27, 33, 39.) These responses, which do not identify the specific facts that are disputed, are not helpful to the Court and do not comply with Rule 56.1. Nonetheless, the Court has endeavored to parse through these submissions to identify genuine disputes of material facts.

### C. 7-Eleven's Franchise Agreements with Mr. Sodhi

Each of the Stores is subject to a franchise agreement ("Franchise Agreement") between Mr. Sodhi and 7-Eleven. (*Id.* ¶ 4.) With one exception, the Franchise Agreements for the Stores are identical in all material respects. (*Id.*) The one material distinction between the Franchise Agreements is the minimum net worth requirement for the Stores. (*Id.*) The minimum net worth requirement for the Lindbergh Road and Roosevelt Avenue stores is $15,000, whereas, the minimum net worth requirement for the other stores is $10,000. (*Id.*) All of the Franchise Agreements, however, require the franchisee to, inter alia:

- Cause all sales of [i]nventory to be properly recorded at the time of sale *at the retail prices set by you* and generally offered by you to customers of the Stores;
- Use electronic equipment provided by 7-Eleven to scan the sale of all products capable of being scanned;
- Prepare and furnish to 7-Eleven actual sales data;
- Prepare and furnish to 7-Eleven daily reports of Receipts;
- Deposit the Receipts for each Collection Period within twenty-four hours after the end of the Collection Period in the Bank or night depository designated by 7-Eleven, except for cash expended by you from the day's Receipts for Purchases or Operating Expenses paid on that day, which Purchases and/or Operating Expenses were required to be properly reported and accompanied by invoices reflecting payment;
- Prepare and furnish to 7-Eleven weekly time and wage authorizations for the Stores' employees;
- Keep 7-Eleven currently advised in writing of all discounts, allowances and/or premiums received in connection with the operation in the Stores;
- Provide 7-Eleven with truthful, accurate and complete information in compliance with all applicable laws and such policies that 7-Eleven may implement from time to time;
- Pay all sales, payroll and income taxes with regard to the operation of the Stores.

(Decl. of Susan v. Metcalfe, Ex. 2A ("Franchise Agreements"), ECF No. 501-6.) In addition, all of the Franchise Agreements describe the franchisee as an "Independent Contractor." (Franchise Agreements ¶ 2; Pl.'s SOF ¶ 10.) In particular, the Franchise Agreements include the following

4

provision describing the franchisee's relationship with 7-Eleven:

> **Independent Contractor.** You and we agree that this Agreement creates an arm's-length business relationship and does not create any fiduciary, special or other similar relationship. You agree: (a) to hold yourself out to the public as an independent contractor; (b) to control the manner and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of your agents and employees, including the day-to-day operations of the Store and all Store employees. You and your agents and employees may not: (i) be considered or held out to be our agents or employees or (ii) negotiate or enter any agreement or incur any liability in our name, on our behalf, or purporting to bind us or any of our or your successors-in-interest. Without in any way limiting the preceding statements, we do not exercise any discretion or control over your employment policies or employment decisions. All employees of the Store are solely your employees and you will control the manner and means of the operation of the Store. No actions you, your agents or employees take will be attributable to us or be considered to be actions obligating us.

(Franchise Agreements ¶ 2.)

### D. 7-Eleven's Audits of Mr. Sodhi's 7-Eleven Stores

On November 17, 2011, 7-Eleven conducted an audit of the Stores. (Metcalfe Suppl. Decl., Ex. A ("Pasarella Decl.") ¶¶ 17-32, ECF No. 517-2; Sodhi Tr. 441:6-20.) 7-Eleven identified what it believed to be accounting discrepancies during this audit. (Pasarella Decl. ¶¶ 20, 23, 25-27.) In particular, 7-Eleven identified an issue with money orders at the Stores. (*Id.* ¶ 23.) Following this audit, 7-Eleven conducted further investigation of the Stores and specifically investigated Mr. Sodhi's employment practices at the Stores. (*Id.* ¶ 42.)

### E. 7-Eleven's Termination of Mr. Sodhi's Franchise Agreement

Based on the results of its audits, on June 25, 2013, 7-Eleven sent Mr. Sodhi a Non-Curable Notice of Material Breach and Termination, which pertained to all of the Stores. (Pasarella Decl., Ex. C ("June 25, 2013 Notice") ¶ 3.) The June 25, 2013 Notice asserted that Mr. Sodhi:

> [I]ntentionally failed to report multiple hundreds of thousands of dollars of merchandise sales, including taxable sales, at the Stores by manipulation of the cash registers. . . . [M]asked a portion of the inventory shortages that would otherwise have resulted from the unrecorded sale of merchandise by various illicit schemes and devices, including making purchases of inventory which were not reported to 7-Eleven and movement of inventory from store-to-store on the day inventory audits were being conducted at all six Stores. . . . [U]sed the cash illicitly, and secretly, siphoned from the Stores to pay the Stores' workers, some of whom were undocumented, in cash (in violation of Federal and State law). . . . [and] paid workers for overtime work at rates less than the minimum wage mandated by State and Federal law, and paid different rates to workers based, not on skill or tenure, but rather, on whether workers were documented or undocumented.

(*Id.*) Thereafter, 7-Eleven served Mr. Sodhi with a Supplemental Notice of Material Breach dated October 21, 2014 ("October 21, 2014 Supplemental Notice"), for all of his Stores. (Pl.'s SOF ¶ 85.) The October 21, 2014 Supplemental Notice gave Mr. Sodhi "sixty days' notice" and an opportunity to cure his breaches. (*Id.*) On December 31, 2014, 7-Eleven sent Mr. Sodhi additional notices of material breach regarding the minimum net worth requirement in the Franchise Agreements. (*Id.* ¶ 87)

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no genuine [dispute] of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (internal quotation marks omitted). If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 209 (D.N.J. 2001).

### III. Discussion

#### A. Violation of the NJFPA

In their Counterclaim, Defendants assert that 7-Eleven violated the NJFPA by: (1) imposing unreasonable standards on Mr. Sodhi's Stores; and (2) attempting to terminate the Franchise Agreements without good cause. (Am. Countercl. ¶¶ 32-42.) In opposition to Plaintiff's motion for summary judgment, Defendants have not, however, adduced any evidence of 7-

7

Eleven's "unreasonable standards." Indeed, Defendants' opposition is entirely silent as to this claim. In light of Defendants' failure of proof concerning this claim, the Court grants judgment on the unreasonable standards violation of the NJFPA claim to 7-Eleven. *See Katz*, 972 F.2d at 55 n.5 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Next, with respect to Defendants' assertion that 7-Eleven is attempting to terminate the Franchise Agreements without "good cause" (Am. Countercl, ¶ 38), Defendants' opposition does not rebut the evidence showing that Mr. Sodhi violated the Franchise Agreements. Here, Mr. Sodhi has admitted that he failed to pay payroll taxes, provide workers' compensation insurance, or withhold and pay Social Security taxes for employees of his Stores. (Sodhi Tr. 293:4-14, 435:15-16, 435:22-25.) The failure to pay and/or withhold these taxes violated the provision in the Franchise Agreements requiring franchisees to "[p]ay [] all . . . payroll . . . and income taxes" with regard to the operation of the Stores. (Franchise Agreements ¶ 21.) In their opposition, Defendants do not dispute that Mr. Sodhi's failure to pay and/or withhold the applicable taxes constitutes breach of the Franchise Agreements or that this is a material breach sufficient to justify termination. On the contrary, Defendants dispute only whether Mr. Sodhi was given sufficient notice and opportunity to cure such breaches, and argue that the termination was improper because it was based on "racial and other animus." (Defs.' Opp'n Br. 21, ECF No. 507.)

Under the NJFPA, a franchisor must give a franchisee "at least 60 days [notice] in advance of . . . termination, cancellation, or failure to renew [a franchise agreement]." N.J.S.A. 56:10-5. Here, Plaintiff asserts that the Franchise Agreements were validly terminated pursuant to the October 21, 2014 Supplemental Notice, which gave Mr. Sodhi the requisite sixty-day-notice of the breaches and opportunity to cure. (Pl.'s Reply Br. 5, ECF No. 517.) Notwithstanding this notice

and opportunity to cure, Mr. Sodhi admits that he never paid and/or withheld the applicable taxes identified in the October 21, 2014 Supplemental Notice. (Sodhi Tr. 293:4-14, 435:15-16, 435:22-25.) Thus, Mr. Sodhi does not dispute that he did not cure the breaches identified in the October 21, 2014 Supplemental Notice of the Franchise Agreements.

The Court finds that Mr. Sodhi's failure to pay and/or withhold applicable payroll and income taxes is, in addition to being against the law,[6] a material breach of the Franchise Agreements. Thus, any purported ulterior motive of 7-Eleven, even if shown, is irrelevant to finding that 7-Eleven had good cause to terminate the Franchise Agreements.[7] *See Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 212 (D.N.J. 2001) ("Dunkin's motives in conducting its inspections have no bearing on whether Defendants breached their Franchise Agreement with Plaintiff by failing to properly maintain the three shops."); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998) ("[W]e find that [franchisee's] failure to comply with McDonald's [quality, safety, and cleanliness] and food safety standards constituted a material breach of the franchise agreement sufficient to justify termination, and thus, it does not matter whether McDonald's also possessed an ulterior, improper motive for terminating the [franchisee's] franchise agreement."). Thus, construing the facts in the light most favorable to Defendants, no reasonable juror could find that 7-Eleven did not have good cause to terminate the Franchise Agreements. *See Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 178 (1985). ("The [NJFPA] . . . is not designed to protect those franchisees who willfully violate the terms of their franchise agreements.").

---

[6] 26 U.S.C. § 7202 (stating that failure to collect and pay applicable taxes constitutes a felony).

[7] Having found that Mr. Sodhi violated the Franchise Agreements by failing to pay and/or withhold the applicable payroll and income taxes, the Court does not address the arguments regarding Mr. Sodhi's alleged violation of the Franchise Agreement's minimum net worth requirement.

9

Accordingly, based on the October 21, 2014 Supplemental Notice and the Court's finding of good cause, the Court finds that the Franchise Agreements have been properly terminated.

### B. Breach of the Implied Duty of Good Faith and Fair Dealing

In their opposition, Defendants assert that disputes of material fact remain as to whether 7- Eleven engaged in inequitable and bad faith conduct with respect to its obligations under the Franchise Agreements. (Def.'s Opp'n Br. 9.) In support of this argument, Defendants cite to only inadmissible hearsay statements about a particular 7-Eleven manager making disparaging remarks about people of Indian descent; a statement in a 7-Eleven powerpoint presentation stating that the company should "[g]et out and look for candidates who fit the store's predominant demographic base – Latino, African American, Veteran, Caucasian; and documents referring to a "Project P" and listing Mr. Sodhi, as well as, other franchise owners, some of whom appear to be of Indian descent, as "Second Wave Target[s]." (Decl. of Gerald A. Marks, Ex. 9, ECF No. 507-1.) As an initial matter, inadmissible hearsay statements are not sufficient to overcome a motion for summary statement. *See Dunkin' Donuts Inc.*, 174 F. Supp. 2d at 212. Next, with respect to the documents cited in Defendants' opposition brief, this evidence is insufficient to defeat a motion for summary judgment. At most, the evidence listing Mr. Sodhi as a "Second Wave Target" and references to "Project P" suggest that 7-Eleven *may* have had an ulterior motive in terminating the Franchise Agreements. As discussed above, however, such an ulterior motive does not preclude termination for "good cause." Thus, as the implied duty of good faith and fair dealing does not "preclude a party from exercising its express rights under such an agreement." *Fleming Cos., Inc., v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (same)), given the Court's finding of "good cause"

for termination, 7-Eleven is entitled to judgment as a matter of law on the counterclaim for breach of the implied covenant of good faith and fair dealing.

### C. Violation of the FLSA

To state a claim for a violation of the FLSA, a plaintiff must as an initial matter show that he is an "employee" as defined by the FLSA. *Michaelgreaves v. Gap, Inc.*, No. 11-6283, 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013). While there is "no single test to determine whether a person is an employee or an independent contractor for the purposes of the FLSA," in this Circuit courts look to the following six factors to determine whether an individual is an "employee":

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991). "The determination of whether an individual should be classified as an employee for the purposes of the FLSA is a question of law." *Atkins v. Capri Training Ctr., Inc.*, No. 13-6820, 2014 WL 4930906, at *7 (D.N.J. Oct. 1, 2014). As discussed below, the Court finds that the factors weigh against finding that Mr. Sodhi is an employee of 7-Eleven.

Construing the evidence in the light most favorable to Defendants, the Court finds that the first factor weighs against finding that Mr. Sodhi was an "employee" of 7-Eleven. In particular, the Court finds that the following testimony from Mr. Sodhi shows that 7-Eleven did not control the manner in which Mr. Sodhi performed his 7-Eleven business: (1) he did not have a regular schedule but rather "just drop[s] by when it is convenient" (Sodhi Tr. 46:8-18); (2) wore a 7-Eleven uniform only once or twice to show his employees that he had a shirt too (*id.* at 213:1-5); (3) visits

India regularly for up to three weeks at a time (*id.* at 26:19-27:8); (4) regularly travels around the country on business not related to 7-Eleven (*id.* at 49:24-50:8); (5) is "totally hands off" in his management of the Store (*id.* 452:13-14); (6) has "other business ventures unrelated to 7-Eleven that monopolize [his] time," (Decl. of Mr. Sodhi ¶ 3, ECF No. 44-8); and (7) along with his managers, has the ability to set the prices charged for merchandise sold in the Stores (Sodhi Tr. 211:4-212:1). *See Carney v. Dexter Shoe Co.*, 701 F. Supp. 1093, 1100 (D.N.J. 1998) (finding that plaintiff's "free[dom] to set his daily schedule as he saw fit," weighed against finding that he was an employee).

With respect to the second factor, the opportunity for profit or loss depending upon managerial skill, it is undisputed that Mr. Sodhi shares in the gross profits of the store (Pl.'s SOF ¶ 35); in addition, Mr. Sodhi testified that gross profits may be increased by product selection and that he has delegated the responsibility for product selection to his managers (Sodhi Tr. 66:18-67:1). Based on Mr. Sodhi's testimony and the undisputed evidence, the Court finds that this factor also weighs against finding that Mr. Sodhi is an employee. *Cf. Donnovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1383-84 (3d Cir. 1985) (recognizing that a small opportunity for profit and loss weighs in favor of finding that an individual is an employee). With respect to the third factor, investment in equipment or materials, Mr. Sodhi alleged in his Counterclaim that he "has spent millions of dollars on franchise fees, licenses, approvals, and related goods and services in operating his [Stores]." [8] (Am. Countercl. ¶ 35.) Accordingly, the Court finds that this factor also weighs against finding that Mr. Sodhi is an employee. *See Donnovan*, 757 F.2d at 1387 (finding

---

[8] In their response to 7-Eleven's assertion in its Rule 56.1 Statement that "Mr. Sodhi made a substantial investment in his franchised business," Defendants state only "Disagreed." (Defs.' RSOF ¶ 40.) Significantly, Defendants did not cite any evidence in their response. Accordingly, pursuant to Rule 56.1, the Court shall deem this fact undisputed. L. Civ. R. 56.1

12

that a significant investment in transportation expenses weighed against finding that individual was an employee). With respect to the fourth factor, whether the services rendered required special skills, it is undisputed that "[Mr.] Sodhi demonstrated business-like initiative by using the profits he made from the Store he initially franchised to invest in one after another additional 7-Eleven store[s], until he operated a total of six stores at once." (Pl.'s SOF ¶ 46.) The Court finds that this demonstration of entrepreneurial skills weighs against finding that Mr. Sodhi is an employee. *Cf. Patel v. Cigna Corp.*, No. 12-6141, 2005 WL 1656930, at *4 (D.N.J. July 12, 2005) ("Individuals who are unskilled are usually regarded as employees rather than independent contractors."). With respect to the fifth factor, the permanence of the working relationship, it is undisputed that Mr. Sodhi could terminate the Franchise Agreements at any time. (Pl.'s SOF ¶¶ 41-42.) Likewise, as discussed above, pursuant to the NJFPA, 7-Eleven could terminate the Franchise Agreements for good cause. Accordingly, the Court finds that this factor also weighs against finding that Mr. Sodhi was an employee. Finally, with respect to the sixth factor, whether the services rendered were an integral part of 7-Eleven's business, 7-Eleven argues that "this factor is neither informative nor helpful" in the franchise context because "[o]n one hand, the services collectively performed by all 7-Eleven franchisees are indisputably integral to 7-Eleven's business," but on the other hand a franchisee could individually be terminated without apparent negative effect to the franchisor. (Pl.'s Moving Br. 46, ECF No. 500-1.) The Court agrees and finds that this factor is neutral as to whether Mr. Sodhi is an employee under the FLSA.

Thus, the Court finds that Mr. Sodhi should not be classified as an employee for the purposes of the FLSA. Accordingly, Defendants' FLSA claim fails as a matter of law.

### D. Violation of the NJLAD

In the Counterclaim, Defendants assert that 7-Eleven violated the NJLAD by either discriminating against Mr. Sodhi, in the context of his employment, or if the Court finds that he was not an employee, Defendants allege that 7-Eleven violated the NJLAD by refusing to do business or terminating Mr. Sodhi as an independent contractor. (Am. Countercl. ¶¶ 48-55). Given the Court's finding that Mr. Sodhi was not an employee of 7-Eleven, the Court finds that Defendants' NJLAD claim for discrimination in the employment context fails. Likewise, Defendants' claims based on 7-Eleven's refusal to do business with or termination of Mr. Sodhi as an independent contractor also fail. Defendants have not alleged that 7-Eleven "refuse[d] to . . . contract with . . . or otherwise do business" with Mr. Sodhi on the basis of his race, which is prohibited by N.J.S.A. 10:5-12(l). On the contrary, Defendants allege that 7-Eleven discriminated against Mr. Sodhi in the ongoing execution of his Franchise Agreements by "tak[ing] aggressive steps to subject [him] . . . and other franchisee (employee) store owners to unreasonable standards and has lodged untrue accusations at [Mr.] Sodhi and other franchisees similarly situated in direct response and retaliation for . . . efforts to combat racial prejudice within the 7-Eleven franchise system." (Am. Countercl. ¶ 55.) Because the NJLAD does not cover "discrimination during the ongoing execution of a contract," Mr. Sodhi's NJLAD claim fails as a matter of law. *Naik v. 7- Eleven, Inc.*, No. 13-4578, 2014 WL 3844792, at *11 (D.N.J. Aug. 5, 2014) ("Plaintiffs conflate a refusal to continue to contract with alleged discrimination during the ongoing execution of a contract, discrimination which the very case cited by Plaintiffs makes clear is outside of the protections of N.J.S.A. 10:5-12(l).") (citing *Rowan v. Hartforf Plaza Ltd., L.P.*, No. L-3106-09,

2013 WL 1350095, at *10 (N.J. App. Div. Apr. 5, 2013) ("N.J.S.A. 10:5–12(l) does not apply to discrimination during the ongoing execution of a contract.")).

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment on Defendants' counterclaims and 7-Eleven's claim for a declaratory judgment that the Franchise Agreements are terminated is granted. The Court shall issue an order consistent with this Opinion.

                                                                      s/ Michael A. Shipp
                                                                      **MICHAEL A. SHIPP**
                                                                      **UNITED STATES DISTRICT JUDGE**

Dated: May 31, 2016