NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

7-ELEVEN, INC.,

              Plaintiff,

              v.

KARAMJEET SODHI, et al.,

              Defendants.

Civil Action No. 13-3715 (MAS) (JS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants Karamjeet Sodhi ("Defendant Sodhi" or "Mr. Sodhi"), Manjinder Singh, and Karamjit Singh's (collectively, "Defendants") June 14, 2016 Motion for a Stay of the Court's May 31, 2016 Order granting summary judgment to Plaintiff 7-Eleven, Inc. ("Plaintiff" or "7-Eleven"). (ECF No. 556.) Plaintiff opposed. (ECF No. 557.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion for a Stay is **DENIED**.

I.     **Background**[1]

On May 31, 2016, the Court granted Plaintiff's Motion for Summary Judgment on Count Eight of Plaintiff's Second Amended Complaint. (ECF Nos. 549, 555.) With respect to Count Eight, the Court found that Defendant Sodhi "admit[ted] that he never paid and/or withheld the

---

[1] The Court assumes familiarity with the facts of this case and will only discuss the background and facts necessary to decide the instant motion. For the purposes of this Memorandum Opinion only, the Court adopts an abbreviated naming convention for submissions from the parties to the Court.

applicable taxes" for employees of the six stores identified in Plaintiff's October 21, 2014 Supplemental Notice of Material Breach and Termination. (Summ. J. Op. 9, ECF No. 548.) The Court found that Defendants' failure to pay and/or withhold taxes constituted a material breach of the Franchise Agreements. (*Id.*) Accordingly, the Court granted Plaintiff's claim for a declaratory judgment and declared the Franchise Agreements properly terminated. (*Id.* at 10.)

On June 1, 2016, Defendants filed correspondence requesting that the Court "enter a Stay of the May 31, 2016 Order . . . which will preserve the *status quo* as established prior to the entry of the Order." (Defs.' Letter, June 1, 2016, ECF No. 550.) The Court then entered an Order "grant[ing] Defendants' request . . . for a temporary stay of the Court's May 31, 2016 Order . . . as it pertains to the Court's declaration that the Franchise Agreements have been properly terminated to permit Defendants time to file a motion for leave to file an interlocutory appeal" and ordering "the parties . . . to maintain the *status quo* pending further Court order." (Text Order, June 1, 2016, ECF No. 551.)[2]

The Court issued a Final Judgment Order on June 7, 2016. (Final J. Order, ECF No. 555.) The Final Judgment Order stated that "pending the resolution of any appeal filed from this Final Judgment, Plaintiff shall not re-franchise or cease operating the 7-Eleven stores previously franchised to Defendants without leave of [the] Court." (Final J. Order ¶ 4.) Furthermore, the Final Judgment Order stated that the June 1, 2016 "temporary stay . . . continued pending the Court's decision on" the instant motion. (*Id.* ¶ 5.) On June 14, 2016, Defendants moved to stay the Court's May 31, 2016 Order pending their appeal before the Third Circuit. (Defs.' Mot. to Stay, ECF No. 556.)

---

[2] On July 18, 2016, Defendants filed a Notice of Appeal with respect to the Court's Order Granting Summary Judgment on Defendants' Counterclaims and on Count Eight of its Second Amended Complaint. (Notice of Appeal, ECF No. 573.)

## II.   Legal Standard

"[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Dep't of Health and Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). Because the grant of injunctive relief is "an extraordinary remedy[,]" a stay pending appeal "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). This remedy "should be granted only if '(1) the [movant] is likely to succeed on the merits; (2) denial will result in irreparable harm to the [movant]; (3) granting the injunction will not result in irreparable harm to the [non-movant]; and (4) granting the injunction is in the public interest.'" *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)).

"Such stays are rarely granted, because . . . the bar is set particularly high." *Conestoga*, 2013 WL 1277419, at *1. In fact, a movant's "failure to establish any element in its favor renders a preliminary injunction inappropriate." *Id.* (citing *NutraSweet Co.*, 176 F.3d at 153). If the movant fails to demonstrate a likelihood of success on the merits, the Court may deny the motion and decline to analyze any of the remaining three factors. *Id.* at *1-3 (rejecting the "'sliding scale' standard whereby preliminary injunctive relief may be granted upon particularly strong showing of one factor").

## III.   Discussion

Defendants argue that they have met their burden of establishing each of the four factors that weigh in favor of granting a stay. (Defs.' Mot. to Stay Br. 3, ECF No. 556-1 ("Defs.' Br.").) Specifically, Defendants argue that they are likely to succeed on the merits of their appeal of the

Final Judgment Order because the Court failed to properly consider their New Jersey Franchise Practices Act ("NJFPA") Counterclaims.[3]  (*Id.* at 3-4.)

### A.    Likelihood of Success on the Merits

1.    NJFPA Notice Counterclaims

Defendants argue that Plaintiff violated the NJFPA's notice requirement when Plaintiff terminated the franchises "absent 'proper notice of any alleged default.'"[4]  (*Id.* at 5)  In support of this assertion, Defendants argue that the June 25, 2013 Non-Curable Notice of Material Breach and Termination improperly defined "[t]he effective date of the termination of the [f]ranchise agreements [as] the date [the] Non Curable Notice of Material Breach and Termination is delivered[.]"  (Passarella Decl. Ex. C, ¶ 9, ECF No. 31-4.)  Defendants further argue that this allegedly improper termination was not cured by Plaintiff's October 21, 2014 Supplemental Notice of Material Breach and Termination (ECF No. 293-12) because "Defendants know of no law which permits 7-Eleven to blatantly violate the Franchise Practices Act and then miraculously cure that

---

[3] The Court dismissed all four of Defendants' Counterclaims. (Summ. J. Op. 15.)  These included claims against Plaintiff for "(1) violation of the [NJFPA;](2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Fair Labor Standards Act . . . [;] and (4) violation of the New Jersey Law Against Discrimination[.]"  (*Id.* at 1 (citations omitted).)  Nevertheless, Defendants' fail to apply the four stay factors to each of the four dismissed Counterclaims.  Upon review of Defendants' briefing for the instant motion, the Court finds that Defendants only applied the four factors to a single dismissed claim: Plaintiff's alleged violation of the NJFPA.  Having failed to address why a stay is warranted on the basis of their claims for breach of implied covenant of good faith, violations of the Fair Labor Standards Act, and violations of the New Jersey Law Against Discrimination, the Court finds that Defendants have failed to meet their burden on those claims. *See, e.g., Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990) ("Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue."); *Matrangolo v. Velez*, No. 13-6289, 2014 WL 2446122, at *2 (D.N.J. May 30, 2014) (stating that in order to obtain a preliminary injunction, the movant has the burden of showing each of the four preliminary injunction factors).

[4] The NJFPA prohibits a franchisor from terminating a franchise without giving "written notice setting forth all the reasons for such termination . . . at least 60 days in advance of such termination[.]" N.J.S.A. 56:10-5.

4

violation by 'doubling down' on their malfeasance." (Defs.' Br. 5.) To that end, Defendants argue that because "7-Eleven initiated this action *eleven days prior to issuing the illegal Non-Curable Notice*," the later Supplemental Notice of Material Breach is irrelevant and leaves a "question of material fact – and law – regarding the lawfulness" of Plaintiff's termination of the Franchise Agreements. (*Id.* at 5-7.)

Plaintiff argues that Defendants never asserted their notice argument in opposition to Plaintiff's original motion for summary judgment, and thus, cannot assert it on appeal. (Pl.'s Opp'n Br. 8, ECF No. 557.) Plaintiff asserts that, even if the June 2013 Notice of Termination violated the NJFPA by failing to give Defendants proper notice, this alleged violation did not "somehow bar[] 7-Eleven from terminating those Agreements *more than a year later* (in October 2014) as a result of [Mr.] Sodhi's *subsequent breaches*." (*Id.* at 7; *see* Suppl. Notice of Material Breach and Termination, Oct. 21, 2014, ECF No. 293-12.) Plaintiff contends that the case law makes clear that the franchisor must retain the right to terminate agreements with franchisees who fail to meet their legal obligations. (*Id.* at 7-8 (stating that the NJFPA "is not designed to protect those franchisees who willfully violate the terms of their franchise agreements" (citing *Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.*, 495 A.2d 66, 72 (N.J. 1985))).)

As to the notice issue, the Court finds that Defendants' Opposition Brief mentions their NJFPA claim, albeit briefly. Specifically, Defendants devoted two sentences to the notice issue. (*See, e.g.*, Defs.' Opp'n to Pl.'s Mot. for Summ. J. 6, 21, ECF No. 507 ("7-Eleven improperly terminated Mr. Sodhi's franchises without good cause. Furthermore, 7-Eleven did so in violation of the notice and cure period requirements of the NJFPA.").) Aside from these alleged violations of the NJFPA, Defendants do not dispute that over a year later, Plaintiff provided them with a "Supplemental Notice of Material Breach and Termination" that fully complied with the NJFPA's

notice requirements. (*See* Defs.' Br. 4-5.) Moreover, Defendants, "[n]otwithstanding this notice and opportunity to cure . . . never paid and/or withheld the applicable taxes *identified in the October 21, 2014 Supplemental Notice.*" (Summ. J. Op. 8-9 (emphasis added).) Defendants responded to the second NJFPA Notice of Termination by arguing that the later October 21, 2014 Notice does not cure the alleged initial NJFPA violation because Plaintiff initiated this action "*eleven days prior to issuing the illegal Non-Curable Notice*[.]" (*See* Defs.' Br. 5.) The Court finds these arguments unpersuasive.

The Court concludes that the October 21, 2014 Notice cured an earlier deficient notice, and that the breaches identified in the October 21, 2014 Notice were properly noticed and never cured. (*See* Summ. J. Op. 8-9.) Thus, whether or not earlier deficient notices were cured, the Court finds that the later notice became active sixty days after Defendants received it. It is true that this action began before the October 2014 Notice became effective. Defendants, however, do not cite to any authority that supports the proposition that an action for a judgment declaring a Franchise Agreement terminated cannot begin while a franchise agreement's notice of termination is not yet effective. *See also Dunkin' Donuts Franchised Rests. LLC v. JF—Totowa Donuts, Inc.*, No. 09-02636, 2013 WL 5574522, at *5 (D.N.J. Oct. 9, 2013) (holding that initiating a civil action "within sixty days of the issuance of the [n]otices of [t]ermination does not make the [n]otices ineffective or amount to a violation of the NJFPA[, which] does not prohibit a franchisor from beginning legal action by the filing of a complaint during the pendency of the sixty-day notice period"); *Dunkin Donuts Franchised Rests. LLC v. Strategic Venture Grp., Inc.*, No. 07-1923, 2007 WL 2332190, at *2 (D.N.J. Aug. 13, 2007) (holding that NJFPA's termination provision "does not preclude a franchisor from initiating a legal action . . . during the pendency of the 60-day notice period").

For the foregoing reasons, the Court finds that any deficiencies in the June 25, 2013 Non-Curable Notice are immaterial. Here, Defendants do not dispute that the second Notice complied with the NJFPA's termination provisions. Moreover, Defendants do not "dispute that [they] did not cure the breaches identified in the October 21, 2014 Supplemental Notice of the Franchise Agreements," or that "Mr. Sodhi's failure to pay and/or withhold applicable payroll and income taxes is, in addition to being against the law, a material breach of the Franchise Agreements." (Summ. J. Op. 9.) Accordingly, the Court concludes that Defendants are unlikely to succeed on this claim. *See NutraSweet Co.*, 176 F.3d at 153.

2.    7-Eleven Imposed Unreasonable Standards of Performance

With respect to the second claim under the NJFPA, Defendants argue that Plaintiff subjected Defendant Sodhi to "unreasonable standards of performance." (Defs.' Br. 7.) Despite the Court's Opinion stating otherwise, (*see* Summ. J. Op. 7-8), Defendants argue that they have repeatedly raised these issues (Defs.' Br. 7). Defendants argue that "7-Eleven insinuated itself into nearly every facet of [Mr. Sodhi's] business and required him to adhere to overly strict and unduly onerous reporting standards regarding inventory, sales, receipts, and the like." (Defs.' Br. 7.) Defendants further assert that Plaintiff "micromanaged [Mr. Sodhi's] hiring and firing practices," unduly influenced the prices of goods, overly filled orders with product in excess of demand, and cultivated a work environment that is hostile toward South-Asian franchisees. (*Id.* at 7-8.) Defendants, therefore, assert that they are likely to succeed on this part of their NJFPA claim.

According to Plaintiff, however, Defendants' contention that Plaintiff imposed unreasonable standards of performance on Mr. Sodhi is irrelevant to this claim because this is an appeal about whether Plaintiff "properly terminated the Franchise Agreements due to Mr. Sodhi's admitted material breaches." (Pl.'s Opp'n Br. 8.) In addition, Plaintiff counters Defendants'

allegation of workplace discrimination by arguing that because Mr. Sodhi does not dispute his failure to pay payroll and income taxes, any alleged ulterior motive is irrelevant to finding that Plaintiff had good cause to terminate the Franchise Agreements. (*Id.* at 9(citing Summ. J. Op. 9).)

The Court finds that, even if Defendants proved their claim for unreasonable standards of performance under the NJFPA, Defendants fail to demonstrate and cite no authority for the proposition that this claim would preclude the termination of a Franchise Agreement. Moreover, the Court finds unpersuasive Defendants' arguments as to why it was the New Jersey Legislature's intention to allow such a result. Defendants' allegations of unreasonable performance standards violations under the NJFPA are, therefore, "irrelevant to finding that 7-Eleven had good cause to terminate the Franchise Agreements." (Summ. J. Op. 9); *see also Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 138 (D.N.J. 2012) (citing *Authorized Foreign Car Specialists of Westfield, Inc. v. Jaguar Cars, Inc.*, No. 98-6008, 1998 WL 34347444, at *2 (3d Cir. Nov. 16, 1998) (dismissing a defendant's NJFPA counterclaim for unreasonable performance standards where the party's own bad behavior constituted good cause under NJFPA because "[t]he NJFPA provides no relief to franchisees whose termination resulted from their own misconduct")). Accordingly, the Court concludes that Defendants are unlikely to succeed on the merits of this claim. *See NutraSweet Co.*, 176 F.3d at 153.

### B.    Irreparable Harm

Defendants argue that they will suffer irreparable harm if the stay is not granted. (Defs.' Br. 8.) Defendants contend that the standard for whether harm is irreparable "is whether the harm . . . is readily compensable by monetary damages." (*Id.*) Defendants allege that where a Franchise Agreement is improperly terminated, the damage is decidedly not monetarily compensable. (*Id.*

at 9 (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205-06 (2d Cir. 1970); *Atl. City Coin & Slot Serv. Co. v. IGT*, 14 F. Supp. 2d 644, 667 (D.N.J. 1998).)

With respect to the second prong, Plaintiff argues that Defendants have failed to show that Mr. Sodhi would be irreparably harmed. (Pl.'s Opp'n Br. 10.) Plaintiff represents that during the pendency of the appeal, Plaintiff will "operate each of the six stores formerly franchised to [D]efendant Karamjeet Sodhi . . . as corporate units until [the] appeal has concluded. 7-Eleven will not close or re-franchise any of those stores while such an appeal is pending." (DeFrancisco Decl., ¶ 4, ECF No. 557-1; Pl.'s Reply Br. 10.) Plaintiff contends that, in the unlikely event that the Third Circuit reverses the Court's ruling, Mr. Sodhi will be free to re-take possession of the franchise locations. (Pl.'s Reply Br. 10.) Additionally, because Mr. Sodhi "will be able to re-take possession of the stores and collect the store profits that he could have withdrawn had he remained the franchisee-in-possession during [D]efendants' appeal," Plaintiff argues that Mr. Sodhi will not be irreparably harmed if the Court denies the stay. (*Id.* at 11 (citing DeFrancisco Decl. ¶ 4).) Plaintiff, therefore, argues that the alleged harm is purely economic. (*Id.* at 10.) Plaintiff further argues that even if Mr. Sodhi does incur injury, this injury should be discounted in an irreparable injury analysis because he brought the injury upon himself. (*Id.* at 11 (citing *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995).)

The Court finds that Defendants have failed to establish irreparable harm in this matter. "The irreparable harm requirement is met if [defendants] demonstrate[] a significant risk that [they] will experience harm that cannot adequately be compensated after the fact by monetary damages." *Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 F. App'x 453, 456 (3d Cir. 2011) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000)). At bottom, Defendants' alleged injury is purely economic. It is well settled that the type of economic harm

alleged by Defendants is not sufficient to show irreparable injury. *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102-03 (3d Cir. 1998) (holding that "purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" when the defendant "has failed to articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages").

Here, Defendants cite case law that finds that termination of a franchise can constitute irreparable injury; however, "[i]f the harm complained of is self-inflicted, it does not qualify as irreparable." *Caplan*, 68 F.3d at 839 (stating that "[b]ecause defendants have acted to permit the outcome which they find unacceptable, [the Third Circuit] must conclude that such an outcome is not an irreparable injury"); *see also Opticians Ass'n of Am.*, 920 F.2d at 197 (stating that the defendant "can hardly claim to be harmed, since it brought any and all difficulties . . . upon itself") The Court finds that, even if Defendants incur an injury, this injury would not be irreparable because Defendants would have brought the injury upon themselves by breaching the Franchise Agreements and failing to pay their taxes. Thus, Defendants "have acted to permit the outcome which they find unacceptable." *Caplan*, 68 F.3d at 839. Moreover, the potential non-economic harm that could allegedly befall Defendants arises from 7-Eleven's representation that it will not refranchise or cease operating the stores absent leave of Court during the pendency of the appeal.[5] Accordingly, the Court finds that Defendants fail to establish irreparable harm.

---

[5] In consideration of Plaintiff's representations, the Court finds good cause to modify the Final Judgment Order. *See* Fed. R. Civ. P. 62(c) (stating that a court has the discretion to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights," while an appeal of a final judgment is pending). The Court, therefore, modifies the Final Judgment Order to include: "pending the resolution of any appeal filed from the Final Judgment Order, Plaintiff shall not re-franchise or cease operating the 7-Eleven stores previously franchised to Defendants without leave of [the] Court. If Defendants are successful on appeal, Defendants shall re-take possession of the stores and collect the store profits that Mr. Sodhi could

In sum, the Court finds that Defendants fail to show that they are likely to succeed on the merits of their claims and cannot establish irreparable harm. The Court properly terminated the Franchise Agreements because Defendants breached the agreements by failing to pay payroll and income taxes and then subsequently failed to cure those breaches. (*See* Summ. J. Op. 9).) Moreover, Defendants do not challenge these findings. Additionally, the Court finds that Defendants have failed to show irreparable harm because the alleged injury is purely economic.[6]

## IV. Conclusion

The Court concludes that Defendants fail to establish the factors necessary for the Court to grant a stay. *See NutraSweet Co.*, 176 F.3d at 153 (stating that a party seeking to stay must meet all four factors because a movants' "failure to establish any elements in its favor renders [a stay] inappropriate"). Accordingly, for the foregoing reasons, Defendants' Motion for a Stay is **DENIED**. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** January 30, 2017

---

have withdrawn had Mr. Sodhi remained the franchisee-in-possession during Defendants' appeal." (*See* Pl.'s Reply Br. 10-11.)

[6] The Court finds that Defendants have failed to meet their burden to satisfy the first two factors on the motion for a stay pending appeal. As such, the Court need not consider the remaining two factors: the public interest in a stay pending appeal, and the harm to Plaintiff in the event the Court granted Defendants' Motion. *See Conestoga*, 2013 WL 1277419, at *1.

11